UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**

JUL 2 0 2012

CLERK

*****************************************************************

|  |  |  |
|---|---|---|
| TIMOTHY KUBISTA, | * | CIV 12-4066 |
|  | * |  |
| Plaintiff, | * |  |
|  | * |  |
| vs. | * |  |
|  | * | MEMORANDUM OPINION |
| VALUE FORWARD NETWORK, LLC, a | * | AND ORDER |
| Georgia limited liability corporation, | * |  |
| subsidiary of Value Forward Group, Inc.; | * |  |
| and | * |  |
|  | * |  |
| PAUL DIMODICA, | * |  |
| individually, and as owner, officer, | * |  |
| manager or member of Value Forward | * |  |
| Network, LLC, and founder and CEO of | * |  |
| Value Forward Group, Inc.; and | * |  |
|  | * |  |
| RENEE DIMODICA, | * |  |
| individually, and as owner, officer, | * |  |
| manager or member of Value Forward | * |  |
| Network, LLC, and as CEO, CFO and | * |  |
| Secretary of Johnson & Hunter, Inc., as | * |  |
| CFO of Value Forward Group, Inc.; and | * |  |
|  | * |  |
| JOHNSON & HUNTER, INC., | * |  |
| a Georgia Corporation, one of the | * |  |
| organizers of Value Forward Network, | * |  |
| LLC; and | * |  |
|  | * |  |
| VALUE FORWARD GROUP, INC., | * |  |
| a Delaware Corporation, one of the | * |  |
| organizers of and parent company of | * |  |
| Value Forward Network, LLC, | * |  |
|  | * |  |
| Defendants. | * |  |
|  | * |  |

*****************************************************************

Plaintiff, Timothy Kubista ("Kubista") brings this action against the five named defendants (Defendants) seeking declaratory and injunctive relief contending the License Agreement between the parties is void. Kubista also requests compensatory and punitive damages arising out of Defendants' alleged violations of South Dakota Franchise law, South Dakota Business Opportunities Law, as well as common law claims. Currently before the Court are Defendants' motion to compel arbitration and Kubista's motion for a preliminary injunction to stop the arbitration. For the following reasons the Court will grant the motion to compel arbitration and will deny the motion for a preliminary injunction.

## BACKGROUND

In October, 2010, Kubista had an interest in business consulting and the following month he contacted Value Forward network through an Internet website. Kubista and Value Forward Network signed a License Agreement, with an effective date of December 15, 2010. Kubista signed the License Agreement on December 6, 2010 and returned it to Value Forward Network. The License Agreement states it is nonexclusive and includes use of intellectual property owned by Value Forward Network. It also includes the Value Forward Curriculum comprised of sales, marketing, strategy and management training curricula and materials identified in the Agreement. The term of the Agreement is three years from the Effective Date. The locations at which Kubista was to maintain offices for marketing, selling, and delivering the Value Forward Curriculum are South Dakota and Minnesota. He was to pay $15,000 upon execution of the Agreement, and $15,000 each anniversary of the effective date. Kubista made the initial payment upon execution of the contract.

Above their signatures, Kubista and Value Forward agreed that the License Agreement was supported by "valuable consideration," that they "intend[ed] to be legally bound by this Agreement," and that they "have fully reviewed and agree to all of the terms and conditions of this Agreement." Each party acknowledged that the Agreement was a "valid and binding contract", and that "it has been represented by counsel or had the opportunity to seek counsel in connection with this Agreement and the matters contemplated hereby." Paragraph 9.3 of the License Agreement, titled, "Arbitration," provides in part:

2

> Any dispute relating to the interpretation or performance of this Agreement shall be resolved at the request of either party through binding Arbitration. Arbitration shall be conducted in Atlanta, Georgia under Georgia law, in accordance with the then-existing rules of the American Arbitration Association. . . . .

Further, paragraph 9.4 provides that the License Agreement shall be governed by and interpreted in accordance with the laws of Georgia, without regard to principles of conflicts of law, and that Licensee and Value Forward Network submit to the exclusive personal jurisdiction and venue of the United States District Court for the Northern District of Georgia "for the purposes of all legal proceedings arising out of or relating to this Agreement."

According to Kubista, the Licensing Program did not work as promised and, on December 2, 2011, he told Defendant DiModica that he would not be able to pay the second year fee on December 15, 2011. Value Forward never received payment for the full amount it claimed was due and, on February 17, 2012, it filed an arbitration demand seeking payment of $30,000 in license fees. Kubista objected to the arbitration alleging the License Agreement is void *ab initio*. He filed an action in state court, alleging that the License Agreement is void *ab initio*, in violation of South Dakota's Franchise Law and Business Opportunities Law. Invoking the parties' diversity of citizenship, Defendants removed the case to federal court and then moved to compel arbitration and to stay or dismiss the court proceedings. Kubista filed a motion for a temporary restraining order, preliminary and permanent injunctive relief, asking this Court to enjoin Defendants from proceeding with the Atlanta arbitration because the License Agreement is void *ab initio*. The Court denied the motion for temporary restraining order after a hearing on April 24, 2012. The parties have fully briefed the Defendants' motion to compel arbitration and the Plaintiff's motion for a preliminary injunction to stop arbitration, and those motions are now ripe for adjudication.

## STANDARD OF REVIEW

Through the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, Congress has established a strong federal policy in favor of arbitration. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Section 2 of the FAA provides that an arbitration clause in "a contract

3

evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Sections 3 and 4 of the FAA allow parties to move to stay or compel arbitration, and motions under either section pose the same threshold question: whether the dispute is subject to an arbitration agreement. *See* 9 U.S.C. §§ 3–4. If a court finds that the parties agreed to arbitrate a dispute, it must stay further litigation (§ 3) or order the parties to arbitrate (§ 4).

A court's role in a motion to compel arbitration under the FAA involves a two-step inquiry: 1) is there a valid agreement to arbitrate between the parties and, if so, 2) does the dispute fall within the scope of that agreement? *See, e.g., Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

## DISCUSSION

### A. Is there a valid agreement to arbitrate?

Under the FAA, ordinary contract principles govern whether parties have agreed to arbitrate." *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir. 1997). Further, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . .should apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944 (1995); *accord AgGrow Oils, L.L.C. v. National Union Fire Ins. Co.*, 242 F.3d 777, 780 (8th Cir. 2001) (applying North Dakota contract law to determine whether incorporation clause included arbitration provision).

Kubista claims that there was no offer because Defendants lacked the authority to make a lawful offer in South Dakota. Specifically, Kubista argues that the Court should not only apply South Dakota contract law, but also the South Dakota Business Opportunity Act and the South Dakota Franchise Act to determine whether a contract was formed. He cites no authority in support of the proposition that a court should apply laws other than contract law to determine whether a contract exists. Kubista explains his argument as follows:

> To lawfully offer to sell a business opportunity or franchise in South Dakota, Defendants first had to obtain the authority from the South Dakota Division of Securities. Because they failed to do that, Plaintiff respectfully submits that after consideration of the applicable law, the Court should conclude that Defendants

4

engaged in fraud in the offer and sale of an unregistered business opportunity and an unregistered franchise in South Dakota, so that no valid contract was formed or could be formed.

(Doc. 26 at p. 23.)   Kubista confuses the issue of arbitrability with the merits of his claim, and the Supreme Court has cautioned against this. *See AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643 (1986). In *AT&T*, the Court held that it was the court's duty to interpret the collective bargaining agreement to determine whether the parties intended to arbitrate the type of grievance at issue, but for the arbitrator to determine the relative merits of the parties' substantive interpretation of the agreement. *Id.* at 651. As *AT&T* makes clear, arbitrability does not depend upon the merits of the parties' dispute. "[T]he judicial inquiry required to determine arbitrability is much simpler"; and is "'strictly confined' to whether the parties agreed to submit disputes over the meaning of [a collective bargaining provision] to arbitration." *Id.* at 654 (J. Brennan concurring) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).   In the present case, the Court will look to South Dakota contract law to determine whether a contract was formed and whether the parties agreed to arbitration.

Under South Dakota law,[1] the elements essential to existence of a contract are: 1) parties capable of contracting; 2) their consent; 3) a lawful object; and 4) sufficient cause or consideration. SDCL § 53-1-2. The creation of a contract requires an offer by one party and an acceptance by the other. *Advanced Recycling Systems, LLC v. Southeast Properties Ltd. Partnership*, 787 N.W.2d 778, 784 (S.D. 2010); *see also Amdahl v. Lowe*, 471 N.W.2d 770, 775 (S.D. 1991) ("The offer had been accepted, it was supported by adequate consideration and, thus, a contract had been formed. . . ."). Traditional contract theory defines an offer as a "'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Day v. Amax, Inc.*, 701 F.2d 1258, 1263 (8th Cir. 1983) (citing Restatement (Second) of Contracts § 24).   Value Forward clearly made an offer to Kubista, he

---

[1] The parties have not indicated that Georgia law regarding contract formation differs from South Dakota law. It appears to be similar. *See, e.g., Moreno v. Strickland*, 567 S.E.2d 90 (Ga. App. 2002) ("A definite offer and complete acceptance, for consideration, create a binding contract.").

accepted it, there was adequate consideration, and a contract was formed which includes a valid arbitration clause.[2]

Kubista also argues the arbitration clause is unenforceable because the entire contract containing the arbitration provision is void. Citing *Prima Paint Corp. v. Flood & Conklin Manuf. Co.*, 388 U.S. 395 (1967), and the Supreme Court's line of cases following *Prima Paint*, Defendants contend Kubista's claim that the contract is void must be submitted to arbitration because Kubista does not limit his attack to the arbitration language in the License Agreement.

In *Prima Paint*, the Supreme Court addressed whether a fraud in the inducement claim relative to a contract containing an arbitration provision must be resolved by the court or referred to arbitration. 388 U.S. at 402. The Court recognized that arbitration provisions are "separable" from the contracts in which they are included. *Id.* at 402–05. Under this separability principle, a federal court may only consider issues relating to the making and performance of the arbitration agreement. *Id.* Thus, if the claim is fraud in the inducement of the arbitration provision itself, the court may adjudicate it. *Id.* at 403–04. However, a claim of fraud in the inducement of the entire contract is subject to arbitration pursuant to the arbitration provision. *Id.*

Later, the Supreme Court distinguished challenges to the validity of a contract on grounds related to its formation from challenges to the validity of a contract on grounds that is void. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). In *Buckeye*, Cardegna entered into various deferred-payment transactions with Buckeye Check Cashing, allowing Cardegna to receive cash in exchange for personal checks. *Id.* at 442. Each time Cardegna cashed a check, he signed a form contract which included an arbitration provision. *Id.* Cardegna brought suit in Florida state court, alleging that the contracts violated various Florida lending and consumer-protection laws, rendering the contracts void for illegality. *Id.* Buckeye moved to compel arbitration pursuant to the arbitration provision. The lower court held that because Cardegna claimed the entire contract was

---

[2]Kubista does not challenge the validity of the arbitration clause itself.

6

void, the agreement to arbitrate was enforceable, and the question of the contract's legality should go to the arbitrator. *Id.* The Florida Supreme Court reversed, reasoning that an agreement to arbitrate in a contract challenged as unlawful could not be enforced. *Id.*

The United States Supreme Court reversed, stating that, "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449. In response to Cardegna's argument that a "valid contract," meaning one that is not "void," must exist in order for the FAA to be applied in the first place, the Court made the following observation:

> It is true, as respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions.

*Id.* at 448-449. Thus, the United States Supreme Court made clear that arbitration, not court, is the proper forum for a challenge to a contract containing an arbitration provision as void for illegality. The Supreme Court noted that "[t]he issue of the contract's validity is different from the issue whether any agreement between the [parties] was ever concluded." *Id.* at 444 n.1.

Subsequently, the Supreme Court confirmed that the question whether the parties ever successfully formed a contract in the first place is one for courts to decide. *See Granite Rock Co. v. Int'l Bd. Of Teamsters*, - - - U.S. - - -, 130 S.Ct. 2847 (2010). In *Granite Rock*, the question was whether the parties had entered into a labor agreement, which contained an arbitration clause, at the time arbitration was requested. The Court determined that the time at which a contract is made raises as much of an existence question as whether a contract was ever formed at all, and thus declared it to be a question for the court rather than for the arbitrators.

Kubista claims he is attacking the formation of a contract and thus the Court must decide the legality of the License Agreement under *Granite Rock*. But he does not contend the parties never

7

entered into the Agreement, and he does not dispute the existence of the Agreement.[3]  Instead, Kubista seeks to have the Agreement declared void in violation of South Dakota law just as Cardegna sought to have the *Buckeye* contracts declared void in violation of Florida law. *Cf. Sanford v. Sanford*, 694 N.W.2d 283 (S.D. 2005) (provisions in prenuptial agreement waiving former wife's alimony rights were void and unenforceable because parties could not legally contract for such a provision under South Dakota law); *1st American Systems, Inc. v. Rezatto*, 311 N.W.2d 51 (S.D. 1981) (finding noncompetition clause in employment contract a restraint of trade and void under state law governing contracts in restraint of trade).  The issue here is not whether there was some irregularity in the creation of the License Agreement.  There was not.  The heart of Kubista's argument is that the License Agreement is void because franchise or business opportunity law prescribes it.  Under *Buckeye*, this type of issue must be submitted to arbitration, and *Granite Rock* does not counsel a different result. *Cf., Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010) (the court decided that a contract was formed because the plaintiff signed an agreement with Questar and the parties performed under that agreement for a year, but the question whether the contract is enforceable was "squarely in the arbitrator's box").

Kubista also relies on *Nature's 10 Jewelers v. Gunderson*, 648 N.W.2d 804 (S.D. 2002). There, the South Dakota Supreme Court held that a franchise agreement which was entered into after the franchise registration expired was void, not voidable, and thus the arbitration clause in the agreement was not enforceable.[4]  *Nature's 10* and its interpretation of South Dakota's Uniform Arbitration Act is not relevant to this Court's interpretation of the FAA.  In any event, *Nature's 10* does not support Kubista's argument that his challenge is to the formation of the contract and not its validity.  The Court in *Nature's 10* stated, "An unlawful contract is void." *Id.* at 807 (citing SDCL 53-5-3 and 20-2-2).  It did not state that an unlawful contract never existed in the first place as Kubista argues here.

---

[3]Kubista and Value Forward performed under the Agreement for a year.

[4]Four years after the *Nature's 10* decision, the distinction between void and voidable contracts was deemed irrelevant for purposes of arbitrability. *Buckeye*, 546 U.S. at 448.

B. <u>Are the Claims Within Scope of the Arbitration Agreement</u>?

In determining whether claims come within the scope of an arbitration provision, "the district court does not reach the potential merits of any claim but construes the clause liberally, resolving any doubts in favor of arbitration and granting the motion unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (internal quotation marks and citation omitted). In determining whether a claim falls within the scope of an arbitration clause, the Court must focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *Id.* "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted).

Kubista argues that the following claims are not within the scope of the arbitration clause:

1. Were Defendants authorized by the State of South Dakota to offer or sell a business opportunity or franchise in South Dakota;
2. Was a valid offer made;
3. Was a valid offer accepted;
4. Was a valid contract formed;
5. Was a valid arbitration agreement formed;
6. If formed, are these issues within the scope of the arbitration agreement;
7. Did Defendants willfully violate South Dakota business opportunity and franchise laws;
8. Are Defendants liable to Plaintiff for fraud, deceit, misrepresentation and unjust enrichment.

(Doc. 34 at p. 18.)

In accordance with *Granite Rock's* holding that courts are to decide whether a contract was formed, this Court decided issues 2 through 6 listed above, all of which relate to contract formation. Focusing on Kubista's factual allegations and not just the legal causes of action asserted in claims numbered 1, 7 and 8 above, Kubista is claiming he was fraudulently induced to enter into the License Agreement. According to *Prima Paint*, such a challenge to the contract must be referred to the arbitrator. *Prima Paint*, 388 U.S. at 403-404. The arbitration clause is very broad and requires arbitration of "Any dispute relating to the interpretation or performance of this Agreement. . . ."

9

Kubista's allegations in claims 1 and 7 that the License Agreement is an unregistered franchise or business opportunity and that Defendants wilfully violated South Dakota franchise and business opportunity laws relate to the interpretation of the Agreement. The License Agreement purports not to be a franchise or business opportunity.[5] The Court is of a preliminary view that it may be exactly what it says it is not. Such a determination would be an interpretation of the License Agreement. If that interpretation of the Agreement is reached, it would be an interpretation favorable to Plaintiff as it would be a finding that Defendants were not in compliance with South Dakota registration laws. If that or a contrary interpretation is made, that is a determination that is to be made pursuant to the terms of this Agreement by the arbitrator.

Furthermore, Kubista's tort claims in issue number 8 relate to the interpretation or performance of the Agreement, namely whether Defendants engaged in fraud, deceit and misrepresentation by offering and selling an unregistered business opportunity or an unregistered franchise in South Dakota. The unjust enrichment claim is also intertwined with his claims alleging violation of franchise and business opportunity laws. The remaining claims, therefore, fall within the scope of the arbitration agreement.

## CONCLUSION

There is a valid agreement to arbitrate and the parties' contractual arbitration provision covers the subject matter of the remaining disputes in this case. Under the FAA, the arbitrator, not the court, should decide whether the License Agreement is void as unlawful. Accordingly,

> IT IS ORDERED that Defendants' motion to stay and compel arbitration (doc. 8) is granted, and Plaintiff's motion for a preliminary injunction (doc. 14) is denied. This case will be stayed pending arbitration.

---

[5]The License Agreement states at paragraph 5.2, "The parties acknowledge and agree that Licensee relationship created by this Agreement is not intended to be and shall not be construed to be a franchise or business opportunity."

10

Dated this ___ day of July, 2012.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY_____
         DEPUTY

11